# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:12cv214

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ) ) ) Plaintiff, ) ) Vs. ) ) DAVID HAMILTON; and EMILE HAMILTON, ) ) ) Defendants ) | ORDER |

**THIS MATTER** is before the court on plaintiff's Motion for Default Judgment, or, In the Alternative, for Appointment of a Guardian Ad Litem, to Deposit Funds and for Summary Judgment.

In moving for entry of default judgment in this interpleader matter, plaintiff has shown that both potential beneficiaries have been properly served, that Emilie Hamilton has timely answered and that David Hamilton has not answered. Further, plaintiff has shown that David Hamilton has executed an affidavit, proper in form, waiving any interest in the *res* of this interpleader action as well as any interest in the estate of his deceased parents. The only hesitation the court has in granting the default and awarding the *res* to Emilie Hamilton is a suggestion on the record that David Hamilton has been determined to be incapable of assisting in his own criminal defense on state homicide charges relating to the death of the insured, his mother, and in the death of his father.

-1-

Under the common law of North Carolina as well as federal common law, a slayer may not recover or benefit from a death he intentionally causes. Under North Carolina's *Slayer Statute,* defendant David Hamilton's alleged criminal acts would disqualify him from receiving benefits under the policy:

> **31A-4. Slayer barred from testate or intestate succession and other rights**. The slayer shall be deemed to have died immediately prior to the death of the decedent and the following rules shall apply: (1) The slayer shall not acquire any property or receive any benefit from the estate of the decedent by testate or intestate succession or by common law or statutory right as surviving spouse of the decedent.
> * * *

N.C.Gen.Stat. § 31A-4. Normally, the court would accept a disclaimer or waiver of beneficial interest submitted by an alleged slayer, as North Carolina law anticipates such a result:

> . **§ 31A-11. Insurance benefits.** (a) Insurance and annuity proceeds payable to the slayer: (1) As the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or (2) In any other manner payable to the slayer by virtue of his surviving the decedent, shall be paid to the person or persons who would have been entitled thereto as if the slayer had predeceased the decedent. If no alternate beneficiary is named, insurance and annuity proceeds shall be paid into the estate of the decedent.
> * * *

N.C.Gen.Stat. § 31A-11. It is undisputed that a North Carolina Grand Jury has found probable cause to believe David Hamilton was culpable in the death of this insured. However, Rule 17 provides in relevant part, as follows:

> (c) Minor or Incompetent Person.
> * * *
> > (2) Without a Representative. A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint

-2-

> a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

Fed.R.Civ.P. 17(c).

The question squarely put to this court is whether a person, who has not been adjudged civilly incompetent under state law, but who has been adjudged at least temporarily unable to assist in his own *criminal* defense, has sufficient mental capacity to waive his interests in insurance proceeds which are to be paid into this court. Admittedly, this defendant's potential interest in such *res* is marginal in light of the Slayer statute and the finding of probable cause by the a state grand jury.

In Hudnall v. Sellner, 800 F.2d 377 (4th Cir.1986), the Court of Appeals for the Fourth Circuit addressed the issue presented here, holding that what Rule 17

> undoubtedly contemplates is that form of mental deficiency which—whether or not accompanied by other forms of personality disorder—affects the person's practical ability to manage his or her own affairs. This is the general test applied by the civil law for making adjudications of "incompetency" for a variety of purposes.

Id., at 385 (internal quotations omitted). As the Fourth Circuit further held:

> [i]n common experience, there is of course no necessary relationship between 'mental incompetence' in this special sense and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation as in other realms.

Id. Inasmuch as the affidavit at question here is akin to a forbearance of a contractual right, the court has found guidance in Williston on Contracts, which provides in relevant part, as follows:

-3-

> a person may be considered mentally incompetent for some purposes yet competent for others. The law now recognizes a wide variety of types and degrees of mental incompetency and distinctions among the various types of mental illness. Among them are congenital deficiencies in intelligence, the mental deterioration that accompanies old age, the effects of brain damage caused by accident or organic disease and mental illnesses evidenced by such symptoms as delusions, hallucinations, delirium, confusion, and depression.
>
> A person is considered incompetent to contract in the vast majority of jurisdictions if, under what is known as the cognitive test, she lacks sufficient mental capacity to understand the nature and effect of a particular transaction or her acts in relation to that transaction. Thus, the time for determining a party's capacity is when the particular agreement is executed, and neither before nor after the time, although the party's condition both before and after execution of the agreement is relevant to his competency at that time.

WILLSTN-CN § 10:8. Likewise, the long-standing rule in North Carolina is that a person has sufficient mental capacity to enter a contract if he is possessed of

> the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

Sprinkle v. Wellborn, 140 N.C. 163, 181 (1905).

While all persons are deemed competent unless determined otherwise, Fed.R.Civ.P. 601, the court believes that if it is to err, it should err on the side of caution and appoint David Hamilton a guardian ad litem in this proceeding. Inasmuch as David Hamilton is presently in the custody of the State of North Carolina and has counsel representing him on the criminal charges, the court finds that appointing an attorney skilled in both criminal and civil law as the guardian would be appropriate and provides for expeditious disposition of this matter. The guardian ad litem shall take whatever steps he believes are necessary in

-4-

executing his duty, but shall conduct the following inquiry:

> (1) meet with David Hamilton at Broughton Hospital and determine what he desires to do in this matter and whether the affidavit he has submitted was executed both knowingly and willfully;
> (2) meet with David Hamilton and determine whether, to the satisfaction of such guardian, Mr. Hamilton has sufficient mental capacity to execute such affidavit;
> (3) meet with David Hamilton's treating physicians and psychologists and determine what mental illnesses he suffers from, the course of treatment, and what, if any, opinions such doctors may have as to defendant's practical ability to manage his or her own civil affairs. Inquiry should, of course, not be made into his ability to proceed in the state criminal matter.

The court will not, however, require the guardian to commission an independent psychiatric examination as it is likely that the inquiry suggested above will provide the guardian with sufficient information with which to make an informed decision.

> It is an unusual situation that impels the grant of a psychiatric examination as a precondition to a determination of competence. The practice of granting psychiatric examinations of witnesses 'must be engaged in with great care' and 'only upon a substantial showing of need and justification.'"

State v. R.W., 104 N.J. 14, 514 A.2d 1287, 1290 (1986) (citing State v. Butler, 27 N.J. 560, 143 A.2d 530, 556 (1958)). After conducting such inquiry, the guardian should report back to the court and, in a pleading, either affirm the previously submitted affidavit of Mr. Hamilton along with his supporting reasons, or move for leave to Answer or otherwise move on behalf of Mr. Hamilton.

Having considered plaintiff's motion and reviewed the pleadings, the court enters the following Order.

-5-

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Default Judgment, or, In the Alternative, for Appointment of a Guardian Ad Litem, to Deposit Funds and for Summary Judgment Ad Litem, to Deposit Funds and for Summary Judgment is **GRANTED** in part and **DENIED** in part as follows:

(1) **S. Frederick Winiker, III** is appointed as guardian *ad litem* for defendant David Hamilton with regard to the above captioned matter to represent his interests in this civil matter. Mr Winiker shall keep a log of his time and expenses and, at the conclusion of his work, submit to the court an application for his fees at his customary and usual rate for professional services;

(2) within 60 days Mr. Winiker shall make a report or otherwise move as provided in this Order;

(3) within 21 days, plaintiff shall pay into the registry of the Clerk of this Court the Death Benefit of $550,000.00, together with any interest that may have thereupon accrued, if any, and such Death Benefit shall remain on deposit with the Clerk of this Court in an interest bearing account pending further Order of this court;

(4) the Clerk shall deduct a fee for handling the funds at or equal to 10% of the income earned for deduction in the investment so held and without further Order of the court, as authorized by the Judicial Conference of the United States and as set by the Director of the Administrative Office of the Courts;

(5) the fees of the guardian *ad litem*, once approved by the court, shall be paid from the interpleaded funds before such funds are dispersed;

(6) upon deposit of the funds by plaintiff, plaintiff's Motion for Summary Judgment is **GRANTED**, and plaintiff is

    (a) **DISCHARGED** from any and all liability to David Hamilton and Emilie Hamilton, and they are permanently enjoined from bringing any action or proceeding in any forum or making any further actual or implied claims, demands and causes of action, asserted or unasserted, liquidated ir unliquidated, or bringing any action or proceeding in any forum, arising out of or in connection with Prudential relating to the Group Policy and/or Death Benefit;

    (b) all claims, rights, interests and actions that David Hamilton and Emilie Hamilton might otherwise have held against plaintiff and its present and former parents, subsidiaries and affiliated corporations, predecessors, successors and assigns and their respective officers, directors, agents, employees, representatives, attorneys, fiduciaries and administrators, with respect to the Group Policy and/or Death Benefit are hereby **RELEASED**; and

    (c) plaintiff is **DISMISSED** with prejudice from this litigation at such time;

(7) the court retains jurisdiction over defendants, who are compelled to litigate,

adjust and/or settle among each other their respective and lawful entitlement to the money to be paid into the court's registry by plaintiff, or upon their failure to do so, this court shall settle and adjust the claims and determine to whom the within total funds shall be paid;

(8) jurisdiction is retained over plaintiff for 14 days and plaintiff is directed to submit its application, if any, for attorneys' fees and costs within such time period; and

(9) plaintiff shall serve a copy of this Order upon all parties as well as the guardian ad litem within seven days of receipt.

Signed: August 30, 2012

Max O. Cogburn Jr.
United States District Judge

-8-

Case 3:12-cv-00214-MOC-DSC   Document 19   Filed 08/30/12   Page 8 of 8